**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHELLE MAJOR, | : | Civil Action |
| Plaintiff, | : | |
| v. | : | No.  21-4253 |
| | : | |
| TREDYFFRIN TOWNSHIP, | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

**DEFENDANT TREDYFFRIN TOWNSHIP'S BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**

Defendant, Tredyffrin Township, by and through its attorneys Deasey, Mahoney &

Valentini, Ltd., respectfully submits this Brief in support of its Motion for Summary Judgment

pursuant to F.R.C.P. 56.

## I.     INTRODUCTION

Plaintiff, Michelle Major (hereinafter "Plaintiff" or "Major"), is a former police sergeant

employed with Tredyffrin Township in the Township's Police Department. When Tredyffrin

Township promoted a male officer to lieutenant in 2020 instead of Plaintiff, she brought this action

alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Acts of

1964 and the Pennsylvania Human Relations Act. (ECF 10). As discussed in further detail below,

the undisputed evidentiary record clearly demonstrates that the Township's promotion decision

was not discriminatory. Therefore, this Honorable Court should grant summary judgment in favor

of Tredyffrin Township.

## II.     STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with the Court's Policies and Procedures, Moving Defendant's Statement of

Undisputed Facts (hereinafter "SOF") is set forth in a separate document file simultaneously

herewith and incorporated herein by reference.

### III.    LEGAL STANDARD

Summary judgment is appropriate where, viewing the evidence in the light most favorable

to the non-moving party, "there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 249-50 (1986). The moving party is not required to provide evidence "negating the

opponent's claim" but rather need only show "that there is an absence of evidence to support the

nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The burden then

shifts to the nonmoving party to point to specific evidence – as opposed to mere allegations,

general denials or vague statements – establishing a genuine issue for trial. *Id.* at 324; *Trap Rock*

*Indus., Inc. v. Local 825*, 982 F.2d 884, 890 (3d Cir.1992). If the non-moving party fails to make

such a showing, summary judgment must be entered against her. *Celotex*, 477 U.S. at 322-23;

*Anderson*, 477 U.S. at 249-50. Thus, to proceed with this case, Plaintiff must present evidence that

is adequate, as a matter of law, to sustain a judgment. *Id.* Plaintiff cannot satisfy this burden and,

therefore, the Court should enter summary judgment in favor of Tredyffrin Township.

### IV.    ARGUMENT

#### A.    Plaintiff's Gender Discrimination Claim Should Be Dismissed.

Plaintiff asserts a claim of gender discrimination in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 and the Pennsylvania Human Relations Act

("PHRA"), 43 Pa. C.S.A. § 951.[1] Plaintiff claims Tredyffrin Township discriminated against her

based upon her gender when the Township promoted a male sergeant to lieutenant instead of her

in 2020. Plaintiff's claim fails based upon the evidentiary record in this case necessitating summary

---

[1] The courts of the Third Circuit apply the same analysis to gender discrimination claims
under Title VII and the PHRA. *Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1083-84
(3d Cir. 1995).

judgment in the Township's favor.

To survive summary judgment in a sex discrimination case under Title VII, a plaintiff must show that his or her sex was the determinative factor in the alleged adverse employment action. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 n.8 (3d Cir. 2007); *Atkinson v. Lafayette College*, 460 F.3d 447, 455 (3d Cir. 2006) ("Faced with legitimate, non-discriminatory reasons for Lafayette College's actions, the burden of proof rested with Atkinson to demonstrate that the reasons proffered were pretextual and that gender was a determinative factor in the decisions."). The task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose. *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 525-27 (3d Cir. 1992).

Where, as here, an employment-discrimination plaintiff presents no direct evidence of discrimination,[2] courts in the Third Circuit analyze Title VII claims under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973). First, the plaintiff must establish a *prima facie* case of discrimination. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999). To do so, a plaintiff must demonstrate that she (1) is a member of a protected class, (2) was qualified for the position, (3) suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. *Jones*, 198 F.3d at 410-11. If a plaintiff cannot establish a *prima facie* case, the defendant is entitled to judgment as a matter of law. *Pivirotto*, 191 F.3d at 352 n.4. However, if a plaintiff establishes a

---

[2] "Direct evidence is 'so revealing of discriminatory animus that it is not necessary to rely on any presumption from the *prima facie* case to shift the burden of production.'" *Embrico v. U.S. Steel Corp.*, 404 F. Supp. 2d 802, 818 n.16 (E.D. Pa. 2005) (*quoting Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)).

*prima facie* case, the burden shifts to the employer to "come forward with a legitimate, non-discriminatory reason for the adverse employment decision." *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 319 (3d Cir. 2000) (*citing Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981)); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500- 01 (3d Cir. 1997) (stating that the employer's burden at this stage is "relatively light"). Then, "[i]f the employer is able to proffer a legitimate, nondiscriminatory reason for its actions, the plaintiff must demonstrate that the proffered reason was merely a pretext for unlawful discrimination." *Id.* (*citing Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133 (2000)).

In order to show pretext, a plaintiff must show that the defendant's proffered reasons were not the true reasons for its decisions. Specifically, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Under the first prong, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (*quoting Fuentes*, 32 F.3d at 765). Notably, "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *Id.* at 1109. Under the second prong, Plaintiff "must identify evidence in the summary judgment record that 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Id.* at 1111 (*quoting Fuentes*, 32 F.3d at

4

762).

### 1.        *Plaintiff Cannot Meet Her Prima Facie Case*.

Plaintiff claims that she was discriminated against on the basis of gender. At her deposition, Plaintiff testified that the sole basis for her sex discrimination claim is the fact that, in or around August 2020, Tyler Moyer, a male sergeant, was promoted to lieutenant over her. (SOF ¶¶ 101, 116). Assuming for purposes of this Motion only that Plaintiff satisfies the first three prongs of her *prima facie* case, Plaintiff cannot show that the decision to promote Moyer to lieutenant over Plaintiff was made under circumstances that give rise to an inference of sex discrimination. To that end, Plaintiff has not introduced any evidence of male comparators who were treated more favorably under similar circumstances. *Drummer v. Hosp. of Univ. of Pennsylvania*, 455 F. Supp. 3d 160, 168 (E.D. Pa. 2020) (plaintiff may introduce comparator evidence to establish fourth element of *prima facie* case). Further, she has not pointed to any circumstantial evidence that shows a causal nexus between her membership in a protected class and the decision not to promote her to lieutenant. *See id.* (plaintiff may establish fourth element of *prima facie* case by relying on circumstantial evidence to show causal nexus between membership in protected class and adverse employment action.).

In this matter, Plaintiff has not put forth any credible evidence other than her own subjective beliefs to support her gender discrimination claim. Broad assertions of a "good ole boys club" culture in the workplace do not create material factual issues of gender discrimination as a matter of law. Indeed, the record in this case is barren of any evidence of gender-based comments (SOF ¶¶ 28, 29); Plaintiff only has the "feeling" of being excluded, causing her to conjure up her "good ole boys club" contentions, and her own self-serving conclusions that this feeling of exclusion had to relate to her gender. While Plaintiff makes blanket assertions of a male-dominated

workplace cabal, she admits that the supposed members of this "good ole boys club," like Glatts and Beaty, did not make disparaging comments with gendered implications. (SOF ¶¶ 28, 29). Plaintiff does not even claim that the purported "good ole boys club" only adversely affected women; Plaintiff testified that the "good ole boys club" disadvantaged men as well as women. (SOF ¶ 59).

Further, Plaintiff admits that the four other male sergeant candidates vying for lieutenant were qualified for the promotion. (SOF ¶ 78). Simply asserting that Beaty was wrong in his assessment of Moyer's skill set and education is not enough to survive summary judgment. *See Fuentes*, 32 F.3d at 765 (a plaintiff cannot simply show that the employer's decision was wrong or mistaken). Second, Plaintiff's belief that workplace camaraderie among co-workers, who happened to be male, or nepotism played a role in Beaty/Brown selecting Moyer does not advance her gender discrimination claim. *See Parks v. Rumsfeld*, 119 F. App'x 382, 385 (3d Cir. 2005) ("friendship or cronyism" is not a basis for relief under Title VII); *Johnson v. Hershey Creamery Co.*, Civ. No. 1:11-cv-00776, 2013 WL 877130, at *8 (M.D. Pa. Mar. 8, 2013) ("...[T]here is nothing unlawful about basing employment decisions on partially subjective criteria, including nepotism."); *Bradley v. Aria Health*, Civ. No. 10-5633, 2011 WL 2411026, at *3 (E.D. Pa. June 15, 2011) ("nepotism and/or favoritism" are not actionable under Title VII). Third, the evidence demonstrates that in addition to Plaintiff, the Township also did not promote similarly situated, male candidates: Scott, Dori and Moore to lieutenant. (SOF ¶¶ 77, 100). Such evidence suggests that there is no basis upon which to reasonably infer that Plaintiff's gender was the reason the Township did not promote Plaintiff to lieutenant.

In short, Plaintiff can present no evidence that would support a finding that the Township's decision not to promote her to lieutenant in 2020 was in any way connected to her gender.

Accordingly, Plaintiff's gender discrimination claim fails, and should be dismissed with prejudice.

### 2.       The Township Had a Legitimate, Non-Discriminatory Basis for Not Selecting Plaintiff for the Lieutenant Promotion.

Plaintiff also cannot offer any evidence to rebut the Township's legitimate, nondiscriminatory basis for not selecting her for the lieutenant promotion. In a failure to hire/promote case, "[a]n employer must be granted substantial discretion to exercise subjective judgment in the rendering of employment decisions . . . ." *Johnson v. Penske Truck Leasing Co.*, 949 F. Supp. 1153, 1172 (D.N.J. 1996) (*citing Burdine*, 450 U.S. at 259). "Unless there is evidence of discrimination, the court is neither permitted to get involved in the subjective [] decision of the employer, nor set its own employment standards for the employer." *Ruff v. Temple Univ.*, 122 F. Supp. 3d 212, 218 (E.D. Pa. 2015). Thus, in order to prove pretext, "more than a denial of promotion as a result of a dispute over qualifications must be shown." *Bennun v. Rutgers State University*, 941 F.2d 154, 170 (3d Cir. 1991) (*quoting Molthan v. Temple Univ.*, 778 F.2d 955, 962 (3d Cir. 1985)); *Dungee v. Northeast Foods*, 940 F. Supp. 682, 689 (D.N.J. 1996) ("[Plaintiff's assertions that she was more qualified amount to nothing more than an attempt to displace the defendants' business judgment with her own, and is thus [sic] insufficient to overcome summary judgment.").

Here, Plaintiff has failed to adduce evidence that the Township's reason for not selecting her for promotion to lieutenant was pretextual. Beaty testified that the decision to promote Moyer was based upon the entirety of the application process, and Beaty's personal interactions with each candidate. (SOF ¶¶ 88-95). According to Beaty, Moyer did well during his interview and Beaty was impressed because Moyer was able to discuss communication within the ranks, accountability and address hot topics at the time. *Id.* Although Major also did well during her interview and addressed information sharing within the department, (SOF ¶ 93), Moyer went the extra step in

7

providing a sample interdepartmental information document for Beaty and Brown to review during

Moyer's interview. (SOF ¶¶ 92, 112). These are all legitimate, nondiscriminatory bases for Beaty's

decision. Plaintiff herself admitted that Moyer, as well as the other lieutenant candidates, were

qualified for the promotion. (SOF ¶ 78).

Although Plaintiff believes she was the most qualified of the candidates (SOF ¶ 101), and

that Beaty's decision to promote Moyer over her was wrong, it is well-established that a "plaintiff

cannot simply show that the employer's decision was wrong or mistaken,[3] since the factual dispute

at issue is whether a discriminatory animus motivated the employer, not whether the employer is

wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 766. To meet her burden, Plaintiff "must

show not merely that the employer's proffered reason was wrong, but that it was so plainly wrong

that it cannot have been the employer's real reason." *Atkinson*, 460 F.3d at 454.

In this case, Plaintiff cannot make that showing, as Plaintiff admits that she has no evidence

to suggest that Beaty and Brown's 2020 lieutenant candidate scores are not accurate or that Beaty

intentionally scored Plaintiff lower to promote Moyer. (SOF ¶¶ 97, 99). Plaintiff even admits that

the candidate interview during the lieutenant promotion process was an important part of the

promotion process. (SOF ¶ 98). Significantly, Beaty testified that after the promotion process was

completed, he took time to reflect upon the lieutenant candidates and consider the results of the

process to ensure that there was no bias before he made the final determination of which candidate

to promote. (SOF ¶ 94). Thus, Plaintiff cannot show that the bases for Beaty's decision were

---

[3] While there is considerable evidence supporting Beaty's promotion of Moyer over Plaintiff, even if Beaty's choice of Moyer was "wrong," "[t]his Court may not now sit as a kind of super-personnel department that reexamines Defendant's business decisions." *Smith v. Thomas Jefferson Univ.*, 2006 WL 1887984, at *5 (E.D. Pa. June 29, 2006). *See also Capps v. Mondelez Global, LLC*, 847 F.3d 144, 154 (3d Cir. 2017) (noting that employers are entitled to make employment decision on the basis of "a mistaken but honest belief").

pretextual. Rather, Plaintiff relies upon her own conclusory suppositions without evidence. A plaintiff's subjective belief that her employer discriminated against her is not a sufficient basis for granting relief in a discrimination case. *See Billet v. Cigna Corp.*, 940 F.2d 812, 816 (3d Cir. 1991). As a result, whether or not Plaintiff can state any *prima facie* discrimination claim at the summary judgment threshold, she cannot establish any material factual issues with respect to the Township's legitimate and nondiscriminatory reason for promoting Moyer to lieutenant over Plaintiff. Accordingly, Plaintiff's gender discrimination claims must be dismissed, with prejudice.

### B.      Plaintiff's Retaliation Claim Should Be Dismissed.

The anti-retaliation provision of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of [her] employees or applicants for employment … because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* Where there is no direct evidence of retaliation, claims alleging retaliation also are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). Under this framework, a plaintiff must first establish a *prima facie* case of retaliation by presenting evidence sufficient to permit a rational trier-of-fact to find: (1) that she engaged in prior protected activity; (2) the employer took adverse action either after or contemporaneous with the employee's protected activity; and (3) there is a causal connection between the plaintiff's protected activity and the employer's adverse action. *Moore*, 461 F.3d at 340-41. A plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation. *See Zaffuto v. Wal-Mart Stores, Inc.*, 130 F. App'x 566, 569 (3d Cir. 2005). A plaintiff cannot satisfy this requirement with speculation – the plaintiff must demonstrate a factual

nexus between the protected activity and the retaliatory employment action. *Tinio v. Saint Joseph Reg'l Med. Ctr.*, Civ. A. No. 13-829, 2015 WL 1530912, at *13 (D.N.J. Apr. 6, 2015)), *aff'd* 645 F. App'x 173 (2016). The factual nexus can be evidenced by temporal proximity, an intervening pattern of antagonism, or the evidence as a whole. *See Borgese v. Dean Foods Co.*, Civ. A. No. 15-2907, 2017 WL 2780742, at *6 (D.N.J. June 26, 2017) (*citing Barton v. MHM Corr. Servs. Inc.*, 454 F. App'x 74, 78-79 (3d Cir. 2011)).

If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the employer to provide a legitimate, non-retaliatory reason for its conduct. *Id.* at 342. If it does so, the burden then shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.*; *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). In a retaliation claim, a plaintiff has the ultimate burden to prove that "his or her protected activity was a but for cause of the alleged adverse employment action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *Collins v. Kimberly-Clark Penn., LLC*, 708 F. App'x 48, 54 (3d Cir. 2017) ("To prove causation at the pretext stage, the plaintiff must show that she would not have suffered an adverse employment action 'but for' her protected activity."). Thus, the plaintiff must ultimately prove that the employer's retaliatory animus was the cause or, put differently, the "real reason," for the adverse employment action. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3d Cir. 2000) (using the term "real reason" to describe the plaintiff's ultimate burden at the pretext stage).

An adverse employment action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. Ry. v. White,* 548 U.S. 53, 68 (2006). Retaliatory harassment, rather than an adverse employment decision, may also form the

basis for a retaliation claim. *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396, 407 (D.N.J. 1996), *aff'd*, 174 F.3d 95 (3d Cir. 1999); *Goldsmith v. E.I. Du Pont de Nemours & Co.,* 571 F.Supp. 235, 240 (D.Del. 1983). To state a claim for hostile work environment, the plaintiff must show that the complained of conduct (1) would not have occurred but for the employee's gender; and it was (2) severe or pervasive enough to make a (3) reasonable woman believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. *Mandel v. M&Q Packaging Corp*, 706 F.3d. 157, 167 (3d Cir. 2013).

### 1.     *Plaintiff Cannot Establish a Prima Facie Case of Retaliation.*

Plaintiff alleges that the Township, through Beaty, Brown, Glatts and/or Moyer, retaliated against her for filing a gender discrimination complaint with the Township in September 2020 following the promotion of Moyer to lieutenant. Plaintiff alleges she was subjected to adverse employment action in four ways. First, Plaintiff claims that she suffered a materially adverse change in the terms and conditions of her employment when Beaty, Brown, Glatts and/or Moyer ignored her in the workplace. Second, Plaintiff alleges that she suffered a materially adverse change in the terms and conditions of her employment when Beaty, Brown, Glatts and/or Moyer bypassed the chain of command. Third, Plaintiff claims that she suffered a materially adverse change in the terms and conditions of her employment when she was denied training and when the Township failed to institute gender diversity initiatives. Fourth, Plaintiffs asserts the evidence demonstrated that she was constructively discharged. (SOF ¶¶ 117, 125, 127). Plaintiff's *prima facie* retaliation claim fails, however, as she cannot establish the requisite adverse employment action, *i.e.*, that she was subjected to retaliatory harassment after engaging in protected conduct, necessary to establish retaliation.

It is well-settled that the ordinary tribulations of the workplace do not constitute actionable

discrimination. These "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. 775, 788). A utopian workplace or a workplace free from strife is not guaranteed by Title VII. *Fichter v. AMG Res. Corp.*, 528 Fed. Appx. 225, 231 (3d Cir. 2013). In order to establish adverse action, Plaintiff must show that the action taken by her superiors/co-workers was "materially adverse" such that it might have "dissuaded a reasonable worker from making or supporting a complaint of discrimination." *Burlington*, 548 U.S. at 54.

In this case, Plaintiff's contention that she was ignored (SOP ¶ 117) is insufficient to convince a reasonable jury of an adverse employment action. Indeed, "ostracism suffered at the hands of coworkers cannot constitute an adverse employment action." *Jensen v. Potter*, 435 F.3d 444, 452 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) (appellate court concluded a jury could find severe retaliatory harassment where there were retaliatory insults, physical threats, and at least four instances of property damage to the employee's vehicle); *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000) ("Because an employer cannot force employees to socialize with one another, ostracism suffered at the hands of coworkers cannot constitute an adverse employment action.). Title VII is not a "general civility code." *Faragher,* 524 U.S. at 788. It does not require that Plaintiff's co-workers "take sides" by supporting Plaintiff, nor does it require that co-workers be, or remain, friends. *Brooks, supra*. Although Plaintiff alleges that Beaty, Brown, Glatts and/or Moyer ignored her in the workplace, Plaintiff's journal entries document numerous positive and cordial interactions with Beaty, Brown, Glatts and Moyer. (SOF ¶¶ 120, 121). Further, Plaintiff admits that there was never a time that she was not supported or backed up when she was out on the streets by Beaty, Brown, Moyer, or other officers since filing her complaint. (SOF ¶ 122). She also admits

12

that being ignored did not prevent her from doing her job duties. (SOF ¶ 123). The conduct of

Plaintiff's co-workers following her complaint does not constitute an adverse employment action.

Plaintiff's allegation that Beaty or other police administrators ignored the chain of

command is equally unavailing. A change in title, office, and reporting relationship is insufficient

to be considered an adverse employment action. *Langley v. Merck & Co., Inc.,* 186 Fed. Appx.

258, 260 (3d Cir. 2006). Plaintiff even admits superior officers are not bound by the chain of

command. (SOF ¶ 126). Similarly, Plaintiff's allegation that she was denied training and gender

diversity initiatives are not tangible adverse employment actions. The Third Circuit has held that

an adverse employment action must consist of an employer taking action that adversely affects the

plaintiff with respect to the employment relationship, as opposed to engaging in conduct that the

employee merely finds objectionable. *Nelson v. Upsala College,* 51 F.3d 383, 387–88 (3d Cir.

1995). In this case, there are no allegations that training or gender diversity initiatives plausibly

affected Plaintiff's employment relationship itself. Indeed, Plaintiff testified that she had the most

education and training of the lieutenant candidates. (SOF ¶ 101). Further, evidence in the case

demonstrates that TTPD provided training and gender initiative for its female officers, including

Plaintiff. (SOF ¶¶ 23, 24). Accordingly, Plaintiff's retaliation claim fails, and should be dismissed

with prejudice.

### 2.       *Plaintiff Cannot Establish Constructive Discharge.*

Finally, with respect to Plaintiff's constructive discharge claim, to establish constructive

discharge, Plaintiff must show that "'the employer knowingly permitted conditions of

discrimination in employment so intolerable that a reasonable person subject to them would

resign.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996); *Harris v. Cobra

Const.*, 273 Fed.Appx. 193, 196 (3d Cir. 2008). The United States Supreme Court in *Pennsylvania*

*State Police v. Suders*, 542 U.S. 129 (2004), explained:

> Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes. The inquiry is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?

542 U.S. at 146. A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign. "[U]nless conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress." 542 U.S. at 146-47. Hence, Plaintiff's subjective perception of her workplace does not govern. Further,

> [w]e employ an objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge. In determining whether an employee was forced to resign, we consider a number of factors, including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations.

*Mandel*, 706 F.3d at 169-70. In order to survive summary judgment regarding constructive discharge, then, "the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." *Spencer v. Wal–Mart Stores*, Inc., 469 F.3d 311, 317 n. 4 (3d Cir. 2006).

Taken collectively, Plaintiff's complaints about her working conditions, are not sufficiently extraordinary or egregious to amount to a constructive discharge. A reasonable person facing the workplace situation to which Plaintiff was subject would not have been compelled to quit her employment. Indeed, Plaintiff testified that being ignored by TTPD administration did not prevent

14

her from doing her job duties. (SOF ¶ 123). She also admits that a superior officer is permitted to violate the chain of command. (SOF ¶ 126). Finally, TTPD provided ample training and gender based opportunities during Plaintiff's employment which belies her claim of constructive discharge. According, Plaintiff's claim of a constructive discharge should be dismissed.

### III.    CONCLUSION

For the foregoing reasons, Defendant, Tredyffrin Township, respectfully requests that this Honorable Court enter summary judgment in its favor pursuant to Fed.R.Civ.P. 56.

Respectfully submitted,

**DEASEY, MAHONEY & VALENTINI, LTD.**

Date: <u>July 5, 2022</u>          BY:    */s/ Andrew B. Adair*
                                        **ANDREW B. ADAIR**
                                        Attorney I.D. No. 70756
                                        103 Chesley Drive, Suite 101
                                        Media, PA 19063
                                        (610) 892-2732 Phone
                                        (215) 587-9456 Fax
                                        *Attorney for Defendant*
                                        *Tredyffrin Township*

15